FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 0 4 2005

DAVID J. MALAND, CLERK
BY
DEPUTY

## United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

DONNA L. HAMPTON          §
                          §
V.                        §          CASE NO. 5:04cv64
                          §          (Judge Folsom/Judge Bush)
Commissioner of Social    §
Security Administration   §

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for Disability Insurance Benefits. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be affirmed.

### HISTORY OF THE CASE

Plaintiff originally filed an application for Disability Insurance Benefits on March 28, 2002, alleging inability to work since August 15, 1998 due to Parkinson's disease and fibromyalgia. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). After holding a hearing *de novo* on May 30, 2003, which hearing was continued on August 5, 2003, the ALJ issued an unfavorable decision on October 7, 2003. Plaintiff was 57 years old at the time of the ALJ decision and has a high school education. Plaintiff subsequently requested that the Appeals Council conduct a review. The Appeals Council denied Plaintiff's request on February 21, 2004.

1

Therefore, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## PLAINTIFF'S ISSUES

Plaintiff raises the following five issues on appeal: (1) whether the Commissioner's decision was supported by substantial evidence; (2) whether the ALJ erred by failing to follow the criteria for evaluating Parkinson's disease (11.06) and the progression; (3) whether the ALJ erred by failing to give substantial weight to the testimony of Plaintiff's treating physicians regarding her disability; (4) whether the ALJ erred by concluding that Plaintiff's allegations regarding her limitations during the period from August 15, 1998 through September 30, 2000 were not persuasive; and (5) whether the ALJ erred by failing to give a proper hypothetical to the vocational expert.

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1.  The claimant met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits during the period [from] August 18, 2000 (the claimant's alleged onset date) through September 30, 2000, but not thereafter.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant has an impairment or a combination of impairments

2

considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations during the period [from] August 15, 1998 through September 30, 2000, are not persuasive for the reasons set forth in the body of the decision.

6.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 404.1527).

7.    During the period [from] August 15, 1998 through September 30, 2000, the claimant had the residual functional capacity to perform light work.

8.    The claimant's past relevant work as house cleaner did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 404.1565).

9.    The claimant's medically determinable fibromyalgia during the period [from] August 15, 1998 [through September 30, 2000] did not prevent the claimant from performing her past relevant work.

10.   The claimant was not under a "disability" as defined in the Social Security Act, during the period [from] August 15, 1998 through September 30, 2000 (20 C.F.R. § 404.1520(e)).

(TR 18-19).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983), and whether the Commissioner applied the proper legal standards in evaluating the

3

evidence. *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981); *see* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano*, 588 F.2d 958, 959, (5th Cir. 1979), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

To establish disability, Plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20

4

C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

## ANALYSIS

### The ALJ Correctly Determined that Plaintiff was Not Disabled on or Before September 30, 2000

Plaintiff notes a number of conditions she contends point to her disability. However, as noted by the Respondent, the central question is whether she was disabled prior to the onset date of September 30, 2000, the date her insured status expired.    There is a reference to fibromyalgia which predates the expiration of Plaintiff's insured status (T.R. 270). However, no limitations are noted. Dr. Niemann states that Plaintiff may have had symptoms of Parkinson's disease as early as January 2000; however he notes that claimant's diagnosis was not well established until 2002 (T.R. 213). There is one notation of insomnia but a denial of depression noted in 1998. All other medical complaints noted by claimant occurred after the relevant time period.

Even though Plaintiff may prove that she was disabled at some time, to be eligible for benefits, Plaintiff must have been in an insured status at the same time the disability occurred. See 20 C.F.R. § 404.131(b). Otherwise, Plaintiff may have been disabled as alleged, but she will not be eligible for disability benefit payments under

5

Title II of the Act.  *See* 20 C.F.R. § 404.131(a)(requiring applicants for Title II disability insurance benefits to have insured status at the time of onset of the disability).  To establish entitlement to benefits, Plaintiff must prove that she was disabled *before* her insured status expired.  *See* 20 C.F.R. §§ 404.315, 404.320.

Plaintiff asserts that she was disabled due to Parkinson's disease, but she did not address the issue of when her impairment began.  As the ALJ notes, Plaintiff's medical history is very limited and the bulk of her treatment notes concern diagnoses and treatment of symptoms associated with fibromyalgia.

In regard to Parkinson's disease, Michael E. Stones, M.D., diagnosed Plaintiff with the disease on February 15, 2002.  The medical record indicates that Dr. Stone began treating Plaintiff in January 2000.  At that time, the doctor reported that Plaintiff had just moved into the area and she had presented for a routine checkup. From January 2000, until February 2002, the doctor's treatment records show that he treated Plaintiff for routine health matters, and for symptoms related to fibromyalgia.

On February 15, 2002, Dr. Stones, noted the presence of "very mild tremors," which "suggest[ed] Parkinsonia gait" (T.R. 277).  The reference to Parkinsonia gait on February 15, 2002 was the first time symptoms were mentioned in the medical record that suggested the presence of Parkinson's disease. For Plaintiff to have been disabled by Parkinson's disease, her symptoms would have had to have been evident and disabling within the relevant period, namely prior to September 30, 2000. A claimant who becomes disabled after the expiration of her insured status is not entitled

6

to benefits under Title II of the Social Security Act. *Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981).

As profound of an impact as Parkinson's disease may ultimately have on Plaintiff, there is no evidence that symptoms of the condition were diagnosed by any physician before Dr. Stones observed them in February 2002. Evidence showing degeneration of a condition after the expiration of a claimant's Title II insured status is not relevant to the Commissioner's Title II disability analysis. *George v. Chater*, 76 F.3d 675 (5th Cir. 1996); *Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995). There are only two isolated references to her legs feeling weak in 1998. No other mention is made about her complaints until 2002.

With regard to Plaintiff's allegations of disabling symptoms from fibromyalgia, the ALJ correctly determined that any limitations imposed by the condition were not disabling during the relevant period. During the administrative hearing, Plaintiff gave vague testimony about "strain, fatigue, pain all over" that developed in 1998 (T.R. 23). Plaintiff's husband explained that the condition Plaintiff described was, in fact, a gall bladder attack, which was resolved medically.

On February 3, 1998, Plaintiff was examined by Jerry L. Cochran, M.D., for complaints of stiffness in her left shoulder. The doctor reported that Plaintiff's left shoulder lacked full abduction, had significant loss of internal rotation, and was painful on external rotation. A Magnetic Resonance Imaging (MRI) examination was performed, which revealed that Plaintiff's left shoulder was unremarkable, and appeared normal at all levels. As a result, the doctor assessed Plaintiff as having

7

subacromial bursitis and fibromyalgia, and prescribed physical therapy. On March 17, 1998, Dr. Cochran reported that he was "extraordinarily pleased" with the results of Plaintiff's physical therapy, and explained that it was important for Plaintiff to continue to do her exercises (Tr. 268). A condition that is amenable to treatment is not disabling. *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); 20 C.F.R. § 404.1530(b).

There is no further mention of fibromyalgia in the medical record until April 5, 2000. Dr. Stones reported that Plaintiff complained that she "felt bad," and that she was having "restless days." The doctor noted the presence of fibromyalgia and prescribed Zoloft. From April 2000 until October 2000, Plaintiff visited Dr. Stones on nine occasions regarding fibromyalgia. The only symptoms reported by the doctor were Plaintiff's complaints of loss of sleep, aching, and fatigue, all of which responded well to treatment. Otherwise, there was no indication in the medial record that Plaintiff's daily activities were limited, or that the doctor imposed any functional restrictions on Plaintiff. Moreover, the medical record indicates that Plaintiff did not seek further treatment until February 2002, when she was observed to have symptoms of Parkinsonia gait. The frequency of treatment may be properly considered in evaluating an alleged impairment. *Fraga v. Bowen*, 810 F.2d 1296, 1303 (5th Cir. 1987). Although Plaintiff may have experienced some pain or discomfort, the mere existence of pain is not an automatic ground for obtaining disability benefits. *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985). To establish disability, there must be a showing of functional impairment which would preclude substantial gainful

activity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

The ALJ correctly assessed Plaintiff's alleged impairments due to Parkinson's disease and fibromyalgia and determined that neither condition was disabling on or before Plaintiff's insured status expired.

### The ALJ Correctly Determined that Plaintiff's Impairment Did Not Meet or Equal Listing 11.06 During the Relevant Period

Plaintiff incorrectly asserts that, due to the diagnoses of Parkinson's disease, Plaintiff met Listing 11.06. In order for the Plaintiff to be disabled due to *Parkinsonian syndrome*, Plaintiff, during the relevant period, must meet the criteria of 20 C.F.R. 404, Subpt. P, Appendix 1, § 11.06, which requires "Significant rigidity, brady kinesia, or tremor in two extremities, which, singly or in combination, result in sustained disturbance of gross and dexterous movement, or gait and station."

A determination regarding a listing is based solely on medical evidence. Plaintiff must provide medical findings that support each of the criteria for the equivalent impairment determination. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). For Plaintiff to show that an alleged impairment matches a listing, it must meet all of the specified criteria. *Id.* An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Id.* It is claimant's burden to prove her condition meets a listed impairment. *Id.*

In this case, the ALJ correctly determined that Plaintiff did not have an impairment that met or equaled a listing in the relevant period. Parkinson's disease

9

was diagnosed in February 2002, a year-and-one-half after the expiration of Plaintiff's insured status. In addition, Dr. Stones observed that there was only a "very mild" tremor, which is insufficient to meet the criteria of Listing 11.06. In fact, Plaintiff testified that she did not have visible tremors, but something she described as "inward shaking" (T.R. 29, 76). Given the criteria of Listing 11.06, the lack of medical evidence of symptoms of *Parkinsonian syndrome*, and the date of diagnosis, the ALJ correctly found that Plaintiff did not have a medically determinable impairment that met or medically equaled a listed impairment.

## The ALJ Properly Analyzed Plaintiff's Subjective Complaints And Discounted Them For Legally Sufficient Reasons

The ALJ made a credibility determination of Plaintiff's subjective complaints after a thorough examination of all the evidence of record. When evaluating the credibility of Plaintiff's subjective complaints, the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

The standard of evaluation is not whether Plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. The mere existence of pain is not an automatic ground for obtaining disability benefits. *Owens v. Heckler*, 770 F.2d at 1281. The mere presence of impairments is not disabling *per se*; to establish disability, there must be a showing of functional impairment which would preclude substantial gainful activity. *Hames v. Heckler*, 707 F.2d at 165. In assessing Plaintiff's subjective complaints of pain, the ALJ considered Plaintiff's daily activities,

the frequency and intensity of the pain, aggravating factors, the effectiveness of medications, and any functional restrictions. See 20 C.F.R. § 404.1529. The ALJ may discount a claimant's subjective complaints if there are inconsistencies between alleged impairments and the evidence as a whole. Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995).

The ALJ is permitted to consider the lack of medical evidence in his assessment of the evidence as a whole. A claimant's subjective complaints regarding her limitations during the relevant period must be corroborated, at least in part, by objective evidence. Wren v. Sullivan, 925 F.2d 123, 129 (5th Cir. 1991) (ruling that subjective complaints may be discounted if not substantiated by credible medical findings of record). Plaintiff was treated successfully for symptoms of fibromyalgia in 1998 and in 2000. With regard to Parkinson's disease, there was no diagnosis of the condition until February 2002. When the evidence is taken as a whole, there simply is no objective evidence that Plaintiff's impairments were disabling during the relevant period.

Side effects from prescribed medications are considered disabling only if the side effects cause significant functional limitations and cannot be adjusted or controlled. Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000) (finding that the ALJ correctly considered the lack of medical evidence to support the plaintiff's allegations of medication side effects). In this case, there was no indication in the medical record that Plaintiff complained of or sought adjustment of her prescribed medication because of adverse side effects. If a claimant takes medication, side-effects of medication

11

must be evaluated. *Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000). The ALJ considered the evidence of record and determined that Plaintiff did not complain of or seek assistance from physicians for adverse side effects from medications.

Dr. Stones treated Plaintiff for over two years. There is no indication that he placed any functional restrictions on Plaintiff's activities. The absence of external manifestations of pain such as loss or limitation of motion may also be considered. *Falco v. Shalala*, 27 F.3d at 163. The lack of restrictions or limitations placed on Plaintiff by her physicians bears upon her credibility with respect to alleged limitations and an ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th Cir. 1988). Substantial evidence supports the ALJ's finding that claimant's subjective symptomatology is not credible when his physicians do not consider her disabled. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995), *citing Harper v. Sullivan*, 887 F.2d 93, 97 (5th Cir. 1989).

The ALJ noted that the Plaintiff testified that her activities were limited. Plaintiff testified that she was able to maintain her own personal care, shop for groceries, drive an automobile, and cook meals. The ALJ properly determined that the restrictions asserted by Plaintiff on her daily activities during the relevant period were not persuasive. Judgment as to the credibility of testimony is the province of the ALJ. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The limitations are self imposed, over stated, and not required by medical necessity. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (holding that when an ALJ properly determines that there is no medical impairment capable of producing a claimant' alleged pain, the ALJ

12

is not required to consider those complaints of pain in his assessment of the claimant's work capacity).

The ALJ noted Plaintiff's physical condition, the medical evidence of record, her daily activities, and her medications, and determined that Plaintiff's subjective complaints of disabling pain were inconsistent with the evidence as a whole. The ALJ's evaluation of the credibility of claimant's subjective complaints is entitled to judicial deference if supported by substantial evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The last relevant period medical record notes that claimant now has "less pain; no more aching; fatigue much better" (T.R. 279). The ALJ considered all of the evidence of record regarding Plaintiff's impairments, singly and in combination, and properly discounted Plaintiff's subjective complaints for legally sufficient reasons.

## The Administrative Law Judge Properly Considered Plaintiff's Primary Treating Physician's Opinions And Conclusions

Plaintiff asserts that the ALJ failed to accord appropriate weight to Plaintiff's treating physicians' opinions and conclusions. A treating source (or, *treating physician*) is defined as any physician or psychologist with whom the claimant has an ongoing treatment relationship, so long as the relationship is not based solely on the need to obtain a report. See 20 C.F.R. § 404.1502.

The ALJ clearly considered the medical findings of both Dr.'s Stones and Niemann. Based on Dr. Stones' findings, the ALJ noted that, during the relevant period, Plaintiff responded to treatment and her complaints of sleeplessness and

13

fatigue improved. Additionally, the ALJ noted that Dr. Stones first diagnosed Plaintiff with Parkinson's disease in February 2002, and that prior to that time there were no symptoms of the disorder noted in the doctor's treatment notes.

On July 16, 2002, Dr. Stones opined that Plaintiff was unable to work since January 30, 2000. The opinions of treating doctors are entitled to considerable deference but not blind allegiance. *See generally, Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). When good cause is shown, less weight, little weight, or no weight may be given to the physician's testimony. Good cause exceptions include disregarding statements that are brief or conclusory, not supported by clinical testing, or otherwise not supported in the record. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The ALJ was free to assign whatever weight he determined to the doctor's conclusions based on the record before the Court. Further, where a physician's treatment notes contradict the physician's later opinion, the ALJ is required to resolve the conflict. *Carey v. Apfel*, 230 F.3d 131, 142-43 (5th Cir. 2000). Given the contradiction in the medical record, the ALJ properly discounted Dr. Stones' retroactive assessment.

On July 17, 2002, Bob B. Niemann, M.D., wrote an opinion letter in which he explained that he had been seeing Plaintiff since February 2002. The doctor offered the opinion that "in retrospect" Plaintiff, "from her history" was showing symptoms of Parkinson's disease as early as January 2000. Given that the doctor had not

14

treated Plaintiff until 2002, his opinion was based on Plaintiff's subjective complaints, not medical findings. A physician's recording of symptoms is not entitled to great weight when the documentation of symptoms was "by history," rather than by direct observation. *Greenspan v. Shalala*, 38 F.3d at 237-38.

Plaintiff cited an opinion of Richard A. Fox, M.D. (Tr. 212). The doctor explained that he had treated Plaintiff for fibromyalgia from November 1, 2000, to October 23, 2001, and he opined that she was unable to work during that period. This opinion appears alone in the medical record. There simply is no other medical evidence in the record attributed to a Dr. Fox. Therefore, there is no indication as to the basis of the doctor's opinion, the nature of the treating relationship, or the clinical tests (if any) used in the assessment of Plaintiff's condition. Therefore, the ALJ did not give the doctor's opinion any weight. An isolated conclusory statement is entitled to little weight. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Therefore, the Commissioner asserts that Plaintiff's allegations are meritless and submits that the ALJ properly considered Plaintiff's treating physicians' opinions and conclusions.

## Proper Vocational Expert (VE) Testimony Provides Substantial Evidence To Support The ALJ's Decision

Upon determining that Plaintiff did not have an impairment that met a listing under Appendix 1, the ALJ proceeded to step four of the five step sequential evaluation process. At step four the ALJ determined that Plaintiff retained the residual functional capacity for light work and that Plaintiff was able to return to her past work as a house cleaner. In order to assess Plaintiff's past relevant work, the ALJ received

15

testimony from a vocational expert. *See* 20 C.F.R. 404.1520(f). The VE assessed Plaintiff's age, education, impairments, and past work history. Based on the VE's assessment of Plaintiff's past work, the ALJ determined that Plaintiff's impairments did not prevent her from performing the duties of a house cleaner and that she was not disabled for purposes of the Act.

While it is correct that the ALJ asked the VE's opinion as to the availability of other work in the regional and national economies, he did not use the information in his findings. Instead, the ALJ noted that the VE testified that Plaintiff's past work as a house cleaner required the ability to perform light work. Given that the ALJ further determined that Plaintiff retained the residual functional capacity for light work, the ALJ found that Plaintiff could return to her past relevant work and did not rely on the hypothetical question. Therefore, Plaintiff's assertion to the contrary is wholly without merit.   The Court thus finds that there is substantial evidence to support the Commissioner's decision.

## RECOMMENDATION

Pursuant to the foregoing, it is RECOMMENDED that the decision of the Administrative Law Judge should be AFFIRMED.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

16

**SIGNED this 29th day of July, 2005.**

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE